Good morning. May it please the Court, I'm Jim Bush. I'm representing Helland's Quantum Production Services, LLC, and Terry Kennedy, who I may refer to today jointly as Quantum. With the permission of the Court, I'd like to reserve five minutes of my time for rebuttal. All right. Watch your clock. Thanks. It's a little bit of an unusual case today in that we don't have the appellee here. The appellee hasn't filed a brief. The appellee isn't here. But as the Court knows, the United States has filed an amicus brief and is represented here today. The District Court's sua sponte dismissal of the complaint in this case with prejudice should be reversed based on three unchallengeable legal principles. Principle number one is that in the Ninth Circuit, sovereign immunity is to be determined at the outset of the case, not at a later date, but at the outset of the case. The Bank of Hemet says that. Lonoi says that. Let's back up a minute. This is not a sovereign immunity case in any classic sense at all, because the United States is now not a party here, and you're not suing the United States as such. You were at the beginning, and so you probably did have – if you look at the beginning, you're probably in worse shape, because at the beginning, you were suing the United States. So they did have – they may well have had sovereign immunity to the lawsuit, but they're not there anymore. Your Honor, first of all, procedurally, we initially filed a case against just Mr. Austin. Then we filed an amended complaint that added the United States. At that point, let's say. We added the United States at that point, and then we later dismissed the United States. So what – now, did the government raise – they came in as amicus. Did they say the word sovereign immunity, or they said other words? Yes, Your Honor. That's exactly what they said. We had the amended complaint. What's exactly what they said? That there's sovereign immunity. Really? I looked at their papers, and I saw them saying various things about why you couldn't reach this money, but I don't know whether they called it sovereign immunity. I believe they did, Your Honor. I think they made two arguments that I can recall. I apologize. I haven't gotten back to look at their amicus brief in front of the trial court, but I believe they said two things. The doctrine of custodial allegiance, if I'm pronouncing that correctly, and the doctrine of sovereign immunity. We objected to their appearing as an amicus. The district court denied our objection, allowed them to appear as an amicus, and then went forward with the default judgment hearing, and based on, apparently, their brief, found that there was sovereign immunity. Why did you dismiss the United States? Two reasons, Your Honor. We initially served them. Mr. Whittlesey called Mr. Van Dyke at my office and said, if you don't dismiss us, I'm going to file a motion to dismiss, so you better dismiss us. And it so happened that at that time, Mr. Austin had defaulted, and we made the decision that let's get this case done. Let's make it progress quickly. We'll dismiss the United States as they have requested, and then we'll go forward with the default judgment against Mr. Austin. When the United States came forward and said, oh, this is terrible. You're manipulating the system. Let us out, but here's our amicus brief. One of the arguments we made why they should not be able to file an amicus brief was that if they want to be part of this case, they have absolutely a right to intervene. There's no question on the rules of federal civil procedure they could have intervened, and we would not have objected to them coming back into the case. We let them out because Mr. Whittlesey said, let me out, I'm going to file a motion to dismiss, and we decided not to fight that at that point. So going back to the first principle, which is sovereign immunity is determined at the outset of the case, even if the United States had been a party at the outset of the case, it wouldn't have made any difference here. And the reason why is the next two principles. One is the Van Cowen-Burke case, which says that if the United States is holding a sum of money in the registry of the court, but it does not have an interest in that money other than as a mere custodian, there's no sovereign immunity issue. Third principle is an express reading or the reading of the express language of 18 U.S.C. section 3613C. The United States' only contention about having an interest in this deposit is that, oh, we have a restitution lien under section 3613C. 3613C expressly says you do have a restitution lien with the United States, but only upon entry of the criminal judgment. There's absolutely no dispute in this case that the criminal judgment was not entered into until November 12, 2009. The original case, our original complaint was filed July of 2009. Our first amended complaint was filed August of 2009. The criminal judgment isn't entered until November 2009. So as a matter of indisputable fact, at the time the complaint was filed, the U.S. had no interest other than as a custodian in this deposit. Sotomayor Let's assume you're correct and sovereign immunity does not apply. Where do you go from here? Well, what we're asking you to do is to send the case back to the district court judge for what it looks at this point will be some sort of default prove-up hearing or other procedures to go forward and prove that we have an entitlement to the $6 million deposit. Well, first of all, did you ever get permission to – what is – what's the nature of your claim? Because I understand that it's an unrecorded equitable lien. You never – it's not recorded and you never got permission to attach the money that was held by the United States district court, is that right? We did not – that's correct, Your Honor. We did not get permission. There are two things that are going on here. Number one is our contention, which we've never had the right yet to prove in court, although we're now working on it in a separate matter over in bankruptcy court. We've never been able to have the right to prove the $6 million deposit, the proceeds of a fraudulent transfer from TAG, a publicly traded company, to Mr. Austin. At some point the government – at some point being when there was a judgment, the government has – now has a restitutionary lien. Correct. Unless you have a prior lien or some way to – or some way to otherwise not be subject to that lien, you would think at the minimum you would have to have some sort of a perfected lien in this property. You don't.  I have two arguments for that, Your Honor. Argument number one is our – What's the answer to my question first? We have two arguments. One is that we have a creditor suit lien. It's not a recorded lien. It's an equitable lien under California law. But under California law, at the time we filed the creditor suit in Los Angeles County Superior Court and served it on Mr. Austin, a lien arose on all of Mr. Austin's property that was owed to TAG. And our argument is this $6 million – require that you have not an unrecorded in the air lien, but some permission or at least recorded interest in this particular property in the United – that's being held on behalf of third parties in the district court. You just walk it – don't you have to perfect it in some way? The answer is, Your Honor, there is no – the perfection of a creditor suit lien occurs when you serve. It may be in the sky, but here you have property that has been segregated in the district court – by the district court and is in Treasury of the United States. And even if we assume that there's no other problem, don't you have to do something to perfect that lien? Well, again, I think the perfection under State law was when we served the complaint on Mr. Austin. In addition to serving on Mr. Austin – Is there not a rule that says that in California and Federal law, funds in the registry of Federal courts are not subject to rights of attachment ordinarily, absent the consent of the district court? And that the funds are supposed to be used for the purpose for which they were deposited. And there's no question that these funds were deposited to pay restitution to the victims of a different fraudulent scheme than the one that you claim you're the victim of. Your Honor, I've not found any case law that says that the monies have to be used for the purpose for which they were deposited. What the statutes say is that once they're deposited, no one can remove them without a court order. Well, there's case law that says that. Well, there's no question you can't get the funds removed without a court order. Can you tell me – I mean, this is highly unusual. I've never seen a suit where there's a criminal action pending and where restitution has been deposited with the registry of the court and some third party who also claims to be wronged, but not wronged by the scheme that's at the heart of the criminal action where the restitution funds have been deposited, can come in and get any of that money. It has to be used to pay restitution to the victims of the fraud once it's proved or admitted by the defendant. There. Now, I don't know if you were also claiming you're a victim of that fraud or if you have a different fraud you're a victim of. In fact, we have made a claim. But, Your Honor, Dan? In fact, what? We have made that claim. We filed a victim statement in the other criminal case. Are you getting – There was no response to it. It was never responded to by the government. But to go back for a moment, you're right. But the court – my understanding is the court is paying restitution. And when the court orders restitution, there's a list of people who are entitled to restitution. So either you – We're not on the list. You're not on the list. We filed a claim. We're not on the list. And you're not on the list because the judge presumably decided not to put you on the list. I presume it's because the U.S. Attorney decided not to put us on the list, although I don't know that. But to go back, this is an unusual case. But I'll – Do you have any case to cite to us that is in this posture where the fines were allowed to be attached or a lien was deemed successful? Well, the closest case is the Van Collenbergy case. But that's not exactly like our case because there the government had enough to take its restitution claim out and did. And then there was something left over, and Van Collenbergy said that the civil party could come in and take what was left over. In that case, there was never any discussion about whether the civil party could have come in and taken the whole fund. But that case is different from this case in a significant way. And this goes back to the second point I was going to make with Judge Berzon a little while ago. We don't have to have a lien here because the property that's in dispute is not Austin's property. It's property of TAC. Go back to 3613C. There is a restitution lien that arises only upon entry of the criminal judgment. You don't have to have what because of that? We don't have to have a lien against this property because the U.S. has no lien against this property if we prove our case. If we prove our case, the property is not Austin's. It's TAC's. 3613C gives the government a lien only against property of the criminal defendant. But money is fungible, right? So if he had – Your Honor. Money is fungible. So if he had $6 million to deposit, he'd deposit that $6 million. I understand that the restitutionary award was actually $17 million. But, I mean, if you have a claim against Austin for taking your money, then you have to go after Austin for it. You can't go to the court. Your Honor, money can be fungible, but it can also be an identifiable fund. And this is an identifiable fund. It's not in the record at this point because we haven't had a chance to do our discovery and present evidence. But here's what we either believe we'll be able to show or know that we can show based on discovery being done over in the bankruptcy court. Austin took literally millions of dollars out of TAC. The accountants complained about it, also resigned because he took it out and wouldn't put it back. We know that. We know that just before he bought a house in Malibu, $2.5 million of the down payment came from an account with his attorney. We've done some discovery and found that that money was money that was intended to buy stock in TAC that Austin took for himself. So maybe you're talking about the bankruptcy proceedings. Is Austin in bankruptcy proceedings? TAG is. TAG is. TAG is. So isn't that your recourse? Well, there are two separate proceedings, Your Honor. We've got quantum. I know, but isn't that the proper recourse? Well, Your Honor, I think there are two proper places to be. One is this initial claim over here, and the second one is over in bankruptcy court. The reason why we're continuing on with this case is, frankly, over in bankruptcy court, Mr. Whittlesey has made the argument, and I think he's wrong about this, but he's made the argument that the trustee in bankruptcy who is pursuing a similar claim against the $6 million is only doing so as an assignee of quantum. As an assignee of quantum, they come with all the defenses that quantum came with. Those defenses include sovereign immunity because quantum has been kicked out by the district court based on trustee in bankruptcy should be kicked out for the same reason. We don't agree with that, but that's an argument that's being made over there, and to deal with that argument, we've come over here to say, no, sovereign immunity doesn't apply. And, again, before I seem to know. One other question. Wasn't there another suit by the government against you for some declaration? Yes, there was. What happened to that case? It ultimately was dismissed because the issues were otherwise resolved. But, yes, the timing was we file our suit, we file our First Amendment complaint, we dismiss. But how could that case be resolved by sovereign immunity? I don't see how they could be otherwise resolved because they weren't resolved. But this suit might be subject to sovereign immunity, but if the government is suing you, why is there sovereign immunity? Well, that was one of our arguments, Your Honor. One of our arguments is the answer was what the district court put in its ruling. It said, I find sovereign immunity bars your claim. But you didn't appeal that case. You appealed this one. No. In the other case, the court never ruled on the merits. It ultimately dismissed the case because of other proceedings that appealed out, including in this case and the bankruptcy case. I know. But you could have appealed that case and said that can't be right because they were only resolved because of the form of the case. Well, what we've done is we've argued in this case that that other case constitutes waiver of sovereign immunity. But how can that be? You can't waive another in another case. I mean, they're not even in this case in that sense. Well, and that's, again, one of our concerns. All right. Is there any of the $6 million left? Yes. There's $700,000 of it left. Even now? Yes. As I understand, there's still $700,000 left. They gave out it. It's just sitting there? It's just sitting there. I think it's because they haven't been able to find the people they want to pay it to. Well, so here's another question, then. As I understand the case law, you might be in a different position if there was money left over. There's money left. I believe they've not been able to find the people they want to pay it to, but it's sitting over still. I don't know if it's in the registry of the court or if it's now in the U.S. Attorney's Office, but there's some $700,000 still sitting there. I see I'm about to run out of time, but I do want to go back just to make this last point. 3613C lien doesn't apply to this money because it's not Austin's money. It's TAG's money. When we prove our case, when we prove that this was a fraudulent transfer, the court will determine that this belongs to TAG. It does not belong to Austin. Was that lien, the restitutionary lien, recorded, the government's lien? I don't believe that it was recorded. I don't know that it needed to be. I don't believe it was recorded. Well, there is some recording requirement. Well, if it is. In order for it to get priority, and it doesn't. Well, if it is, I don't know the answer to that, Your Honor. But my point is the lien, ultimately, when you get to the United States case. I understand your point. I asked a different question. Okay. I just want to make sure that we understand. Our argument is the lien doesn't matter because it's not Austin's property. Yes, you said that four times. Okay. All right, Your Honor. Thank you, counsel. Thank you. Thank you. May it please the court, good afternoon. My name is Brent Whittlesey. I'm here today on behalf of the United States and on behalf of the victims in the Steven Austin criminal case who were entitled to restitution. I'm up last today and I will be brief. The district court's judgment dismissing this case on the grounds of sovereign immunity should be affirmed. And the reason why it should be affirmed is because, as Judge Wardlaw pointed out, these funds, the $6 million, was deposited with the clerk of the U.S. district court into the court's registry for a specific purpose, which was the payment of restitution. That's not true. It may be that you should win, but I'm having a hard time understanding why you meant sovereign immunity. I mean, first of all, ordinarily, sovereign immunity is when there's a lawsuit against you and there isn't. Right? Or there are different aspects of the sovereign immunity doctrine. I mean, as I understand this case, you – the only connection – I guess there are two connections of the United States to this money. One is that, as I understand it logistically, it was deposited with the district court, but what that really means is it's somewhere in the coffers of the United States government. It's in an account at U.S. Bank in the name of the Central District of California. So are you claiming sovereign immunity on behalf of the Central District? I'm claiming sovereign immunity, yes, on behalf of all organizations of the United States government, including the Central District. Including the court. Yes. Sure. And this is very similar to the nationwide case, which I mentioned in the 28J letter that we sent in last week, in which a judgment creditor attempted to garnish money that was payable to a Federal civilian employee. But that doesn't seem like it is, because that money began being the United States money. Here, the money did not begin as the United States money. No. It was deposited into the registry of the court. Right. As a protector of the money, but not as having at that point anything but custodial control over the money. Right. And what this court said in Van Kalenburg was that funds that are deposited with the court for the payment of criminal restitution are not subject to garnishment  funds. All right. Well, suppose it turns out that you don't you can't distribute the $700,000. First of all, is there still $700,000? I don't know the exact amounts, Your Honor, but there's probably still some money left. Well, probably matters, doesn't it? Well, you know, at the time that we submitted the brief. I know that, but I would have thought you would have found that out. Your Honor, I think. I was actually thinking of issuing an argument, but I think, well, of course I'll know. But you don't know. I don't know for sure, but I can certainly find out, and I'll file an appropriate document with the court to let you know. All right. All the victims come forward as to that particular fraud? There are several hundred victims that are entitled to restitution, Your Honor. And when you say come forward, I'm not sure exactly what you mean. Are they all named in the restitution order? They're named in the restitution order. Now, some of them, the clerk doesn't have good addresses for. You know, they mail out a distribution check. The check comes back. That's how they have funds to go out to the public. All right. Suppose at some point, suppose we sent this case back, and this is just completely hypothetical, but, and the plaintiffs went to the district court and said, we want an order that if there's money left over, we can go forward with our lawsuit. What would be wrong with that? The thing that's wrong with that, Your Honor, is that if the difference between this case and von Kauenberg is that all the victims have been paid in full in von Kauenberg. Okay. If the clerk can't distribute the $700,000 or whatever amount is presently owed because they can't locate the people who are entitled to it, the clerk at some point, I presume, will distribute that money to the other victims who are unpaid. There's still $11 million of restitution that's owed after distribution of the first $6 million. Austin was sentenced to pay $17 million in restitution. So you mean the list of people who are being paid was just a priority list, but there are other people? No. There are some people on the list who cannot, who the clerk has not been able to deliver the funds to. So what do you mean they're paying to other people? Who are the other people? They'll pay them to the victims who have already received a partial distribution until the funds have been exhausted. You mean that they're being paid on a prorate basis? Yes, exactly. How do we know that? That's what the clerk's office does. So do you have a copy of the restitution order? I mean the judgment and sentencing in that case. I'm sorry, Your Honor. Do you have a copy of the judgment of conviction in that case with the restitution order? I don't have a copy of the full victim list. Well, that's what I think I would want to say. We did order the plea agreement under seal, and I think that it might be helpful to our understanding of this case if we also had a copy under seal of the judgment of conviction and the sentencing and the restitution order. I brought the judgment and commitment order. I brought the pre-sentence report. I will have to get the restitution order and submit that to the court, and I will do that. Okay. Now, has the so is your sovereign immunity position that from the outset, from the minute that this money was segregated, there was no way to reach it? Yes. But isn't that inconsistent with Van Karrenburg? No. Why? Because in Van Karrenburg, this Court said that funds in the registry of the court are not subject to legal process by a third-party creditor unless the United States has no interest in the funds. All right. But the unless, but on your theory, it always had an interest because it was in segregated you're saying that simply the segregation in the under the custody of the district court was sufficient and Van Karrenburg to create a sovereign immunity from suit as opposed to a different defense. No. No. I'm not saying that, Your Honor. Assume for a moment. You are saying that. You have to be because at the moment that this began, there was my understanding is that there was no judgment and no restitution lien. That's correct, Your Honor. So you have to be saying that simply from a sovereign immunity point of view, not custodial legis or restitution lien or anything else, but just from a sovereign immunity point of view, you seem to be saying that they simply couldn't. The whole lawsuit had to stop at that point. And that seems inconsistent with Van Karrenburg. Your Honor, if Stephen Austin had deposited $6 million and he had been ordered to pay restitution in the amount of $4 million, there would have been $2 million. But at the time it was deposited, he wasn't ordered to pay restitution at all. Well, the United States had an interest in the entire fund at the time it was deposited,  How? Until the restitution. How? As a representative of the victims who were entitled to receive restitution in the criminal case. But there was no judgment yet. There was no judgment yet, Your Honor. But there was a criminal case, and it was reasonably foreseeable that a judgment would be entered and that restitution would be ordered. And the United States is the representative of victims pursuant to statute for the purposes of collection of restitution. But the statute sets it up very precisely and says that you have a – once there's a judgment, and if you record it, is my understanding, and you can tell me whether that's right or wrong and whether you've recorded it, you have a restitution lien. There's a – there's a restitution lien under 3613A in all property of the defendant that arises upon the entry of a judgment and commitment order, which is not – If recorded, right. Which is not required to be recorded, actually. Really? Not – no. Okay. I thought it was. But in either event, it hadn't happened at the time this lawsuit came. So the question is, do we have an interest in the property at the time that it's deposited, or do we have a lien on the property at the time it's deposited? Van Kallenburg says we have to have an interest in the property. It doesn't say we have to have a lien. And we didn't have a lien at the time that it was deposited, but we did have an interest. Interest is a lot broader term than lien. Was the – was the money deposited after the plea agreement was entered? After the plea agreement was entered. One moment here. I'm looking at my timeline. The $6 million was deposited in June of 2009. The information was filed against Austin in September of 2007. And I have to look at the court document to find out when he entered his guilty plea. So then he entered that with the plea agreement. He could have entered the plea agreement before he entered his guilty plea. Yes. And I have the docket right here. Okay. And I'm looking for the change of plea hearing. The change of plea hearing was on March 17, 2008. So he had pleaded guilty in 2008. He deposited the money in 2009. And he was sentenced later in 2009. Let me ask you perhaps a – it turned out to be not a kind of a stupid question, but it would help me. What if Austin had obtained the money he deposited by stealing it from his neighbor? And it came to light at some point in time. What claim would that neighbor have to those funds? In the hands of the district court, Your Honor? Yes. Your Honor, I think that the district court could make an order under 2104, I believe it is, of the judicial code that would take into account the equities of that situation. In other words, the – But doesn't that mean, therefore, that this – just at a minimum, this isn't a sovereign immunity problem, because if somebody can adjudicate something about this money, anything about it, while it's in the district court's custody, even though the United States is proceeding with a restitution order, which it doesn't have yet, then there's a lot of interesting things that's going on here, but I'm having a hard time seeing why it's an immunity problem. Well, I think it's an immunity problem, Your Honor, because Ben Kallenberg says it's an immunity problem. Actually, as I rethink Kallenberg, it says the opposite. It says it's not an immunity problem. It's you can't get the money for various reasons, but where does it say it's an immunity problem? And the one sentence that I can find is it says it's not an immunity problem. Attachment of the property in the registry of the court under the circumstances of this case does not implicate sovereign immunity. I mean, the problem with treating it as an immunity problem is at that point all inquiry stops, and all these other things that you say could be contingently important are no longer even relevant, and that doesn't seem right. Well, at one point this morning, Your Honor, you said it was an immunity problem. You asked counsel where they go from here, assuming that immunity doesn't apply, and I'd like to answer that. The answer is they don't go anywhere because they never go. That's perfectly possible, but what do we do then? Do we now decide what the district court didn't decide and go through all this very interesting stuff about custodial legis and restitutionary liens and all that, or do we say go back and sort it out? No, Your Honor, I don't think you need to say go back and sort it out. I think you say that they never had a lien because they didn't serve the right person under the California Code of Civil Procedure for one-third reason, and for the second reason, actions of a State court in principle under supremacy grounds simply can't be allowed to affect the disposition of funds in the Federal district court. I'm not sure whether or not they had a lien even matters because I don't see how they can go after the funds that have been deposited in the registry of the court in any event. Well, yes, exactly. Regardless of whether they had a lien. Right. And also I tend to agree this isn't a problem of sovereign immunity either. It's just that this money was deposited in the court. I'm more inclined to follow the custodial legis doctrine or line of reasoning. Of course, no one briefed it, but that's how I would tend to see this case. It was deposited there for the purpose of paying restitution to the victims of that criminal prosecution. Well, I thought that was a good argument in the district court, Your Honor. Okay. Can I ask, so to the extent Quantum claims it was a victim in this particular criminal prosecution, was that litigated? Your Honor, Quantum wasn't a victim in this prosecution. Quantum Productions was the boiler room that Austin used to bilk the investors. Kennedy was running the boiler room in San Diego that made the calls. And the evidence of that is in the record. I actually would submit it to the court in the form of victim impact letters from victims complaining that Terry Kennedy, who's the principal of Quantum, made false statements to them to induce them to invest in the Austin Ventures. They're a co-participant in this fraud. That's why they're not on the victim list. Why are they not criminally prosecuted? I think they should have been. If I'd been doing the criminal prosecution, Terry Kennedy would have been in the dock. And I've actually had some heated conversations with my colleagues about that. Your Honor, you asked counsel why it was that the government asked to be dismissed as a defendant in the original case. I didn't ask to be dismissed as a defendant. I asked that the case be dismissed on the grounds that it had no merit. And the response by counsel was to dismiss the United States and thereby go forward with the case, but deprive us of the opportunity to participate and represent the individual. Well, you could have filed a Rule 19 motion and it probably would have been granted. I could have filed a Rule 19 motion. I could have. But amicus worked, too. So when the case was going to go forward and the victims needed to have a voice, that was what we did. Unless there are other questions, I'll submit the matter. I understand that my homework is to get the – I think we can probably take judicial notice of the judgment and commitment, the victims, and perhaps some victims' letters that were filed in connection with the sentencing. Very well. I'll have that right here. Okay. Maybe put together in a package and file it under seal. I will do so, Your Honor. All right. Thank you very much. Thank you. You want one more minute? Your Honor, if I could have just one more minute. Okay. I just have two quick things, Your Honor. It's not a custodial legis case under Van Kallenberg. Van Kallenberg, he says, if you come to the federal court that holds the money, that's not a custodial legis problem. Van Kallenberg, he deals with that specific issue. Secondly, I wanted to say, Judge White, the question you raise is exactly what this case is. Austin took money that didn't belong to him from TAG. He took TAG's money. He came to court and said, hey, I want to use this money to make restitution to these other victims. And the government's position is nobody gets to come in and litigate that issue. TAG doesn't get to come in and litigate it. No one gets to come in and litigate it. Once the criminal gets the money into the hands of the clerk of the court, nobody can touch it. Nobody can litigate it. I guess that is their position, and their position is that essentially that there's a criminal conviction and that these people are entitled to the money and that somebody else has a problem, they should go somewhere else and get some different money. No, Your Honor. Their position is sovereign immunity says you can't even bring a claim. If they want to go back and litigate the merits of the liens and whether this is really Austin's property or TAG's property, we're happy to go back and litigate that. Their position is sovereign immunity means you can't even come to court to argue about this, and that's the basis on which our complaint was thrown in. I don't understand why you say this isn't a custodial legal problem. I thought that the case in question really says specifically that it is a custodial legal problem, and it has to be dealt with in a certain way. You have to go to the court and get permission to attach it, and then you can only get the money that isn't being used for the purpose for which it was segregated. But it doesn't say you can't get the money. So if, for example, they were never able to hand out this other whatever money is left, he's saying, well, it would then go to the victims, and maybe it would, or maybe it would be left over, and maybe you'd be able to get some of that. The point, Your Honor, is that that's ultimately a question for the district court initially to decide on the merits. Right. But why do you say it's not a custodial legal problem? Custodial legal says you can't go to state court, for instance, and get a writ of attachment to come against this property being held in the federal district court. You can't do that. You can't go to state garnishment. Well, that's essentially what you did. You got a default judgment in state court, and then you brought it here to get money. No, Your Honor. The default judgment we got against TAG was years earlier. We then were looking for ways to enforce the judgment. That's right. That's what I'm saying. That's right. But we came to the federal court to say, let us litigate this here. We didn't try and come over to the fund, sitting in the clerk of the court, saying, we've got a writ of execution from the Superior Court in San Diego. Give us the money. We came to federal court and said, under 2041 and 2042, the money is now in the hands of the federal district court, and it can't be removed without an order, a court order under 2042. Give us the court order, and here's why we're entitled to it. That's what our claim is. And the response, ultimately, from the district court judge was, no, sovereign immunity precludes you from coming into this court and even asking for a 2042 order. I suppose he had said instead, this money is in the custody of the court for the purposes for which it was put there, and it hasn't been used for that purpose yet, and as far as I know, it's all going to be used up, so I'm not going to give you permission. If he ultimately said that, then perhaps it would be up to your saying whether or not he had the authority to do that. But we don't have that case. Is that a custodial legis approach to the issue? No, the custodial legis approach. All right. Well, that's not the name. I just asked you to read Van Conberger. I did read that. That's what I thought it said. Van Conberger said you could read that claim. Thank you. All right. Thank you, counsel. Quantum Production v. Austin will be submitted, and this Court will be adjourned for this session.
judges: Whyte, Wardlaw, Berzon